# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

JULIO CESAR DIAZ MURO,

Petitioner,

v.

U.S. DEPARTMENT OF HOMELAND SECURITY, et al.,

Respondents.

Case No. 1:26-cv-05993-KES-EPG-HC

FINDINGS AND RECOMMENDATION TO GRANT PETITION FOR WRIT OF HABEAS CORPUS AND DIRECT RESPONDENTS TO IMMEDIATELY RELEASE PETITIONER

Petitioner is a federal immigration detainee proceeding *pro se* with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. For the reasons set forth herein, the undersigned recommends that the petition for writ of habeas corpus be granted and Respondents be directed to immediately release Petitioner.

## I.

## BACKGROUND

Petitioner is a citizen of Cuba who was paroled into the United States on or about May 18, 1980. On July 21, 1988, Petitioner adjusted his status to legal permanent resident with an effective date of May 18, 1980. (ECF No. 7-1 at 2.[1]) On July 3, 1991, Petitioner was convicted of homicide in violation of section 782.04.1b of the Florida Statute, and robbery with a firearm, in violation of section 812.13.2a of the Florida Statute. Petitioner was sentenced to twelve years in

[1] Page numbers refer to ECF page numbers stamped at the top of the page.

prison for each offense, served concurrently. On August 15, 2008, Petitioner was convicted in the United States District Court for the Southern District of Florida of conspiracy to import five kilograms or more of cocaine, in violation of 21 U.S.C. § 963. Petitioner was sentenced to 240 months in prison. (ECF No. 7-1 at 2.)

On September 30, 2021, the Department of Homeland Security issued a Notice to Appear ("NTA"). (ECF No. 7-5.) On November 24, 2021, an immigration judge ordered Petitioner removed to Cuba. Petitioner did not file an appeal with the Board of Immigration Appeals. (ECF No. 7-7.) On or about February 2, 2022, the Petitioner was released on an Order of Supervision ("OSUP") after it was determined at that time there was no significant likelihood of removal to Cuba in the reasonably foreseeable future. (ECF No. 7-1 at 3; ECF No. 7-4.)

On January 13, 2026, Enforcement and Removal Operations ("ERO") took Petitioner into custody for removal enforcement and served him with a Notice of Revocation of Release, a Form I-205 (Warrant of Removal/Deportation), a Form I-294 (Warning to Alien Ordered Removed or Deported), and a Form I-229 (Warning for Failure to Depart) with instruction sheet regarding Petitioner's requirement to assist in removal. Petitioner refused to sign all of the documents. On February 21 and April 4, 2026, ERO served Petitioner a notice of intent to remove him to Mexico, and Petitioner refused to sign the documents. On June 3, June 11, June 17, June 24, and July 1, 2026, ERO re-served the Petitioner with a Form I-229 (Warning for Failure to Depart) with an instruction sheet and a notice of intent to remove him to Mexico, and Petitioner refused to sign the documents. On July 6, 2026, ERO served Petitioner a Notice for Failure to Comply, a Form I-229 (Warning for Failure to Depart) with instruction sheet, and a notice of removal to Mexico, and Petitioner refused to sign all documents. On August 5, 2026, ERO re-served the Petitioner with a Form I-229 (Warning for Failure to Depart) with instruction sheet and a notice of intent to remove him to Mexico, and Petitioner refused to sign the documents. (ECF No. 7-1 at 3–4.)

On July 30, 2026, Petitioner filed a petition for writ of habeas corpus. (ECF No. 1.) On August 24, 2026, Respondents filed an untimely response.[2] (ECF No. 7.)

[2] In the interest of justice, the Court has reviewed and considered Respondents' untimely response.

## II.

## DISCUSSION

Although the deadline for Petitioner to file a reply to Respondents' response has not yet passed, the undersigned finds that issuance of the findings and recommendation is appropriate.

### A. Statutory Authority for Petitioner's Detention

Congress has enacted a complex statutory scheme governing the detention of noncitizens during removal proceedings and following the issuance of a final order of removal. "Where an alien falls within this statutory scheme can affect whether his detention is mandatory or discretionary, as well as the kind of review process available to him if he wishes to contest the necessity of his detention." Prieto-Romero v. Clark, 534 F.3d 1053, 1057 (9th Cir. 2008).

"Section 241(a) of the Immigration and Nationality Act (INA), codified at 8 U.S.C. § 1231(a), authorizes the detention of noncitizens who have been ordered removed from the United States." Johnson v. Arteaga-Martinez, 596 U.S. 573, 575 (2022). "After the entry of a final order of removal against a noncitizen, the Government generally must secure the noncitizen's removal during a 90-day 'removal period.' § 1231(a)(1)(A). The statute provides that the Government 'shall' detain noncitizens during the statutory removal period. § 1231(a)(2)."[3] Id. at 578 (some internal quotation marks omitted).

> Under § 1231, the removal period may be extended in at least three circumstances, such that an alien remains detained after 90 days have passed. First, the removal period may be extended if the alien fails to make a timely application for travel documents or acts to prevent his removal. § 1231(a)(1)(C). Second, DHS may stay the immediate removal of certain aliens if it decides that such removal is not practicable or proper, or if the alien is needed to testify in a pending prosecution. § 1231(c)(2)(A). And finally, the statute provides that an alien may be detained beyond the removal period or released under supervision if he is (1) inadmissible, (2) removable as a result of violations of status requirements, entry conditions, or the criminal law, or for national security or foreign policy reasons, or (3) a risk to the community or unlikely to comply with the removal order. § 1231(a)(6); see also 8 CFR §

---

[3] "This 'removal period' begins on the latest of either (1) the date a noncitizen's 'order of removal becomes administratively final,' (2) the date of a court's final order, if the noncitizen's removal order is judicially reviewed and this court stays the noncitizen's removal, or (3) the date the noncitizen is released from criminal detention or confinement." Avilez v. Garland, 69 F.4th 525, 531 (9th Cir. 2023) (citing 8 U.S.C. § 1231(a)(1)(B)).

> 241.4 (setting out procedures DHS must follow to impose continued detention). Continued detention under this provision creates the "post-removal-period."

Johnson v. Guzman Chavez, 594 U.S. 523, 528–29 (2021).

Here, Respondents argue that Petitioner's "refusal to cooperate extended the removal period, making detention mandatory under § 1231(a)(2) and permissible afterwards when DHS determined non-compliance with the removal order is likely." (ECF No. 7 at 4 (citing 8 U.S.C. § 1231(a)(1)(C), (a)(2), (a)(6)).) Judges in this district have rejected this argument as "frivolous" and a "wast[e of] the court's time and resources" and observed that "[t]o adopt the Government's position on the use of detention to strong-arm third-country removal to Mexico would not only undermine the consent requirement of removals under the present standing agreement but also sanction the use of detention to coerce otherwise unavailable removals." Obando Vargas v. Blanche, No. 1:26-cv-05343-DAD-AC (HC), 2026 WL 2056618, at *2 (E.D. Cal. July 16, 2026); Ramirez Outerino v. Warden, No. 1:26-cv-05326-DJC-JDP, 2026 WL 2327873, at *2 (E.D. Cal. Aug. 11, 2026).

Accordingly, the undersigned recommends finding that 8 U.S.C. § 1231(a)(1)(C) is not applicable, Petitioner is not subject to mandatory detention during an extended period under § 1231(a)(2), and Petitioner is subject to discretionary detention under § 1231(a)(6).

**B. Zadvydas**

In Zadvydas v. Davis, 533 U.S. 678 (2001), the Supreme Court addressed a challenge to prolonged detention under § 1231(a)(6) by noncitizens who "had been ordered removed by the government and all administrative and judicial review was exhausted, but their removal could not be effectuated because their designated countries either refused to accept them or the United States lacked a repatriation treaty with the receiving country." Prieto–Romero, 534 F.3d at 1062 (citing Zadvydas, 533 U.S. at 684–86). The Supreme Court "read an implicit limitation" into the statute "in light of the Constitution's demands," holding that § 1231(a)(6) does not authorize indefinite detention and "limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States." Zadvydas, 533 U.S. at 689.

> After [a presumptively reasonable] 6–month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the "reasonably foreseeable future" conversely would have to shrink. This 6–month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.

Zadvydas, 533 U.S. at 701.

However, the six-month presumptively reasonable detention period and "the burden-shifting framework from *Zadvydas* does not apply" to challenges to "ICE's authority to *re-detain* [petitioner] after he was issued a final order of removal, detained, and subsequently released on an [order of supervision]." Yan-Ling X. v. Lyons, 813 F. Supp. 3d 1157, 1163 (E.D. Cal. 2025) (alterations in original) (quoting Nguyen v. Hyde, 788 F. Supp. 3d 144, 149 (D. Mass. 2025)). "[T]his is not your typical first round detainment of an alien awaiting removal," whereas Zadvydas "dealt with the initial detainment of an alien awaiting removal." Escalante v. Noem, No. 9:25-CV-00182-MJT, 2025 WL 2206113, at *3 (E.D. Tex. Aug. 2, 2025).

**C. Revocation of Order of Supervision**

In Ground Three of the petition, Petitioner asserts that Respondents failed to follow 8 C.F.R. § 241.4 and 241.13. (ECF No. 1 at 7.) Respondents do not address this claim whatsoever in their response.

"Specific regulations, 8 C.F.R. §§ 241.13(i) and 241.4(l), govern how and when ICE may revoke the release of a noncitizen who has been ordered removed." Yan-Ling X., 813 F. Supp. 3d at 1162. 8 C.F.R. § 241.13(i) provides in pertinent part:

> (1) Violation of conditions of release. Any alien who has been released under an order of supervision under this section who violates any of the conditions of release may be returned to custody and is subject to the penalties described in section 243(b) of the Act. In suitable cases, the HQPDU shall refer the case to the appropriate U.S. Attorney for criminal prosecution. The alien may be continued in detention for an additional six months in order to effect the alien's removal, if possible, and to effect the conditions under which the alien had been released.

> (2) Revocation for removal. The Service may revoke an alien's release under this section and return the alien to custody if, on account of changed circumstances, the Service determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future. Thereafter, if the alien is not released from custody following the informal interview provided for in paragraph (h)(3) of this section, the provisions of § 241.4 shall govern the alien's continued detention pending removal.
>
> (3) Revocation procedures. Upon revocation, the alien will be notified of the reasons for revocation of his or her release. The Service will conduct an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification. The alien may submit any evidence or information that he or she believes shows there is no significant likelihood he or she be removed in the reasonably foreseeable future, or that he or she has not violated the order of supervision. The revocation custody review will include an evaluation of any contested facts relevant to the revocation and a determination whether the facts as determined warrant revocation and further denial of release.

8 C.F.R. § 241.13(i)(1)–(3).

8 C.F.R. § 241.4(b)(4) provides:

> Service determination under 8 CFR 241.13. The custody review procedures in this section do not apply after the Service has made a determination, pursuant to the procedures provided in 8 CFR 241.13, that there is no significant likelihood that an alien under a final order of removal can be removed in the reasonably foreseeable future. However, if the Service subsequently determines, because of a change of circumstances, that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future to the country to which the alien was ordered removed or to a third country, the alien shall again be subject to the custody review procedures under this section.

8 C.F.R. § 241.4(b)(4). With regard to revocation, 8 C.F.R. § 241.4(*l*) provides in pertinent part:

> (1) Violation of conditions of release. Any alien described in paragraph (a) or (b)(1) of this section who has been released under an order of supervision or other conditions of release who violates the conditions of release may be returned to custody. Any such alien who violates the conditions of an order of supervision is subject to the penalties described in section 243(b) of the Act. Upon revocation, the alien will be notified of the reasons for revocation of his or her release or parole. The alien will be afforded an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification.
>
> (2) Determination by the Service. The Executive Associate Commissioner shall have authority, in the exercise of discretion, to revoke release and return to Service custody an alien previously

> approved for release under the procedures in this section. A district director may also revoke release of an alien when, in the district director's opinion, revocation is in the public interest and circumstances do not reasonably permit referral of the case to the Executive Associate Commissioner. Release may be revoked in the exercise of discretion when, in the opinion of the revoking official:
>
> (i) The purposes of release have been served;
> (ii) The alien violates any condition of release;
> (iii) It is appropriate to enforce a removal order or to commence removal proceedings against an alien; or
> (iv) The conduct of the alien, or any other circumstance, indicates that release would no longer be appropriate.[4]

8 C.F.R. § 241.4(*l*)(1)–(2).

1. Notice and Informal Interview

The petition alleges that Petitioner was not provided an informal interview. (ECF No. 1 at 7.) Respondents do not respond to this allegation and do not address whatsoever whether the revocation of Petitioner's supervised release complied with applicable regulations. There is nothing in the record before this Court demonstrating that Respondents provided an informal interview as required by 8 C.F.R. §§ 241.13(i) and 241.4(*l*). Accordingly, the undersigned recommends finding that Petitioner is entitled to habeas relief on this ground. See Hoac v. Becerra, No. 2:25-cv-01740-DC-JDP, 2025 WL 1993771, at *4 (E.D. Cal. July 16, 2025) ("Because there is no indication that an informal interview was provided to Petitioner, the court finds Petitioner is likely to succeed on his claim that his re-detainment was unlawful."); Yang v. Kaiser, No. 2:25-cv-02205-DAD-AC (HC), 2025 WL 2791778, at *5 (E.D. Cal. Aug. 20, 2025) (finding that "failure to provide an informal hearing is alone sufficient to entitle petitioner to the requested" relief of release from custody).

2. Change of Circumstances

The "regulations at 8 C.F.R. §§ 241.13(i) and 241.4(l) apply to non-citizens in petitioner's situation and outline the process to be followed," including that "when ICE revokes

[4] Although "DHS has asserted in other litigation that the notice [and interview] requirements set forth in 8 C.F.R. § 241.4(l)(1) do not constrain revocation of release pursuant to § 241.4(l)(2), several district courts have rejected that argument." Khamba v. Albarran, No. 1:25-cv-01227 JLT SKO, 2025 WL 2959276, at *8 n.13 (E.D. Cal. Oct. 17, 2025) (collecting cases and "agree[ing] with those decisions that the notice and interview requirements apply to anyone whose supervision has been revoked pursuant to 8 C.F.R. § 241.4(l)(1) or (2)."

release to effectuate removal, 'it is [ICE's] burden to show a significant likelihood that the alien may be removed.'" Yan-Ling X., 813 F. Supp. 3d at 1163 (alteration in original) (quoting Escalante, 2025 WL 2206113, at *3) (citing Roble v. Bondi, No. 25-cv-3196 (LMP/LIB), 2025 WL 2443453, at *4 (D. Minn. Aug. 25, 2025) ("[T]he regulations at issue in this case place the burden on ICE to first establish changed circumstances that make removal significantly likely in the reasonably foreseeable future."); Abuelhawa v. Noem, No. 4:25-cv-04128, 2025 WL 2937692, at *8 (S.D. Tex. Oct. 16, 2025) ("[U]pon revocation of release, the Government bears the burden to show a significant likelihood that the alien may be removed in the reasonably foreseeable future."); Nguyen, 788 F. Supp. 3d at 150).

Here, Respondents argue that "[w]hen non-cooperation is the only obstacle, removal remains reasonably foreseeable and detention remains lawful." (ECF No. 7 at 4.) However, as set forth in section II(A), *supra*, this argument is not persuasive. The declaration of a deportation officer submitted by Respondents states that "[i]f Petitioner cooperates (including signing required forms and agreeing to depart), . . . ICE can complete removal to Mexico within approximately seven days." (ECF No. 7-1 at 4.) "Courts have noted that that the standing agreement between the United States and Mexico appears premised on Petitioner's compliance and have therefore held removal based on the standing agreement between the United States and Mexico is not reasonably foreseeable when the noncitizen does not consent to the removal." Ramirez Outerino, 2026 WL 2327873, at *2 n.1 (collecting cases). Here, Petitioner has refused consent to removal to Mexico multiple times. (ECF No. 7-1 at 3–4.) Accordingly, Respondents have failed to satisfy their burden that changed circumstances have made Petitioner's removal significantly likely in the reasonably foreseeable future as required by 8 C.F.R. § 241.13(i).

**D. Remedy**

"Federal habeas corpus practice, as reflected by the decisions of [the Supreme] Court, indicates that a court has broad discretion in conditioning a judgment granting habeas relief. Federal courts are authorized, under 28 U.S.C. § 2243, to dispose of habeas corpus matters 'as law and justice require.'" Hilton v. Braunskill, 481 U.S. 770, 775 (1987). "[H]abeas corpus is, at its core, an equitable remedy." Schlup v. Delo, 513 U.S. 298, 319 (1995). "Moreover, in

constitutional adjudication as elsewhere, equitable remedies are a special blend of what is necessary, what is fair, and what is workable." Lemon v. Kurtzman, 411 U.S. 192, 200 (1973) (footnote omitted).

1. Immediate Release

Based on the foregoing, the undersigned recommends finding that Petitioner's re-detention was unlawful and his immediate release from custody is warranted.[5] See Nguyen, 788 F. Supp. at 152–53 ("ICE's individualized determination to re-detain Mr. Nguyen is not in compliance with 8 C.F.R. § 241.13(f), (i)(2)" and "[b]ased on ICE's violations of its own regulations, I conclude that Mr. Nguyen's detention is unlawful and that his release is appropriate."); Liu v. Carter, No. 25-3036-JWL, 2025 WL 1696526, at *3 (D. Kan. June 17, 2025) ("Accordingly, the Court concludes that because officials did not properly revoke petitioner's release pursuant to the applicable regulations, that revocation has no effect, and petitioner is entitled to his release (subject to the same Order of Supervision that governed his most recent release)."); Yan-Ling X., 813 F. Supp. 3d at 1167 ("Petitioner has shown that she is likely to succeed on her claim that ICE did not have sufficient grounds to re-detain her under the regulations, and that her re-detention was therefore unlawful. Her immediate release is required to return her to the status quo ante."). The Court recognizes that Petitioner has a serious criminal history. However, it does not appear that Petitioner committed additional crimes after his previous release on supervision and thus, any concerns are adequately addressed through the conditions of supervision imposed on Petitioner. See Thai v. Ashcroft, 366 F.3d 790, 797 (9th Cir. 2004) ("Like Ma, Thai is an ordinary violent criminal. If a need to protect the community did not justify the detention of Ma—a killer—under § 1231(a)(6), it similarly does not justify the detention of Thai."); Obando Vargas, 2026 WL 2056618, at *2 ("In short, binding Ninth Circuit and Supreme Court authority forecloses the import of criminal history in determining whether petitioner is entitled to release from detention pursuant to 8 U.S.C. § 1231(a)(6), both insofar as that history suggests petitioner is a danger or a risk of flight.").

[5] In light of this conclusion, the Court declines to address Petitioner's other claims.

2. Pre-Deprivation Hearing

"[M]any courts in this district have found that when a non-citizen subject to a final order of removal is released on OSUP and is re-detained years later, the non-citizen is entitled to a pre-deprivation hearing prior to detention due to an accrued liberty interest." Huang v. Albarran, 818 F. Supp. 3d 1154, 1166 (E.D. Cal. 2026) (citing J.L.R.P. v. Wofford, No. 1:25-cv-01464-KES-SKO (HC), 2025 WL 3190589, at *8–10 (E.D. Cal. Nov. 14, 2025); Alva v. Kaiser, No. 25-cv-06676-RFL, 2025 WL 2419262, at *3–5 (N.D. Cal. Aug. 21, 2025)). Applying the Mathews v. Eldridge, 424 U.S. 319 (1976), factors, the J.L.R.P. court "found that the petitioner was entitled to a bond hearing prior to re-detention because":

> (1) petitioner had a significant private interest in remaining free from detention after being out of custody for nearly four years and built normal attachments to life (2) the risk of erroneous deprivation is high because 8 C.F.R. §§ 241.13 and 241.4 do not provide for review of ICE's reasons for revocation by a neutral arbitrator and (3) the government's interest in detaining petitioner without a hearing is low because in immigration court, custody hearings are routine with minimal costs.

Huang, 818 F. Supp. 3d at 1166 (citing J.L.R.P., 2025 WL 3190589, at *9–10). "Similarly, in *Alva*, the court found a due process violation where the government detained a non-citizen with a final order of removal, released on OSUP for over six years, without a pre-deprivation hearing." Huang, 818 F. Supp. 3d at 1166 (citing Alva, 2025 WL 2419262, at *3–5). Likewise, in Huang, the court found a due process violation where the government detained the petitioner with a final order of removal, released on OSUP for nearly seven and a half years, without a pre-deprivation hearing. Huang, 818 F. Supp. 3d at 1166–67.

Based on the foregoing, the undersigned recommends finding that "in the event of his re-detention, Petitioner has a right to a pre-deprivation hearing where the government bears the burden of showing that Petitioner's release poses a flight risk or danger to the community." Huang, 818 F. Supp. 3d at 1166–67 (citing J.L.R.P., 2025 WL 3190589, at *9–10; Alva, 2025 WL 2419262, at *3–5).

\\\

\\\

3. Third Country Removal

"In recent months, the Government's policy regarding third country removals has shifted substantially. In particular, policy memoranda issued on March 30 [the Noem Memo] and July 9 [the Lyons memo] by DHS have become frequently discussed in similar cases[.]" Escobar v. Chestnut, No. 1:25-cv-01801-DJC-EFB, 2025 WL 3687639, at *2 (E.D. Cal. Dec. 19, 2025).

> The Noem Memo provides two different tracks for removals of noncitizens to third countries, determined primarily by whether the third country in question "has provided diplomatic assurances that aliens removed from the United States will not be persecuted or tortured." (Noem Memo at 10). In instances in which the United States "has received such assurances," which the Department of State "believes to be credible," then "the alien may be removed *without the need for further procedures.*" (*Id.* at 10-11) (emphasis added).
>
> In instances where the United States has *not* received such assurances – or has received assurances but "does not believe them to be credible" – ICE is required to follow a separate procedure. (*Id.* at 11). In those cases, ICE will "inform the alien of removal to that country" but "will not affirmatively ask whether the alien is afraid of being removed to that country." (*Id.*). Only where a noncitizen "affirmatively states a fear of removal" will they be referred to "screening for eligibility for protection under INA § 241(b)(3) and the Convention Against Torture (CAT) for the country of removal." (*Id.*). The Noem Memo provides further guidance as to those noncitizens who *do* affirmatively state a fear of removal to the third country. (*Id.*). It states that the noncitizen will generally be screened within twenty-four hours, after which USCIS "will determine whether the alien would be more likely than not to be persecuted on a statutorily protected ground or tortured in the country of removal." Where a noncitizen does not meet this standard, they "will be removed." (*Id.*). If the noncitizen meets this standard, then the matter will be referred to Immigration Court. (*Id.*). Where the individual in question "was previously in proceedings before the Immigration Court," the immigration officer will inform ICE, which "may file a motion to reopen with the Immigration Court or the Board of Immigration Appeals, as appropriate, for further proceedings" to determine eligibility for protection under INA § 241(b)(3) or CAT for the country of removal. (*Id.*).
>
> The Lyons Memo was issued in light of the Supreme Court's granting the Government's application to stay the district court's nationwide preliminary injunction in *D.V.D. v. Dep't of Homeland Security*, No. 25-10676, 2025 WL 1142968 (D. Mass. Apr. 18, 2025). (Lyons Memo at 13-14). In short, the Lyons Memos provides that "ICE must adhere to [the Noem Memo]." (*Id.* at 13). It reaffirms that, in instances where the United States has received credible diplomatic assurances that "aliens removed from the United States will not be persecuted or tortured," that the

> noncitizen "may be removed without the need for further procedures." (*Id.*). It reiterates that, "in all other cases," ICE is to notify the noncitizen of the intended country of removal and "will *not* affirmatively ask whether the alien is afraid of being removed to the country of removal." (*Id.*) (emphasis in original). It further provides that ICE "will generally wait at least 24 hours following service of the Notice of Removal before effectuating removal[,]" but that such removal may be executed after six hours in "exigent circumstances[.]" (*Id.*). Where a noncitizen has not affirmatively stated a fear of persecution or torture "within 24 hours," then ICE "may proceed with removal to the country identified on the notice." (*Id.* at 14). The Lyons memo reiterates the procedure detailed in the Noem Memo for those noncitizens that do affirmatively express a fear of removal to the third country in question. (*Id.*).

Esmail v. Noem, No. 2:25-CV-08325-WLH-RAO, 2025 WL 3030589, at *1–2 (C.D. Cal. Sept. 26, 2025) (footnotes omitted).

"'It is well established that the Fifth Amendment entitles aliens to due process of law' in the context of removal proceedings." Trump v. J. G. G., 604 U.S. 670, 673 (2025) (quoting Reno v. Flores, 507 U.S. 292, 306 (1993)). "[A] basic tenet of constitutional due process [is] that individuals whose rights are being determined are entitled to notice of the issues to be adjudicated, so that they will have the opportunity to prepare and present relevant arguments and evidence." Andriasian v. I.N.S., 180 F.3d 1033, 1041 (9th Cir. 1999). Thus, "[f]ailing to notify individuals who are subject to deportation that they have the right to apply for asylum in the United States and for withholding of deportation to the country to which they will be deported violates both INS regulations and the constitutional right to due process." Andriasian, 180 F.3d at 1041. Accord Ibarra-Perez v. United States, 154 F.4th 989, 995 (9th Cir. 2025) ("DHS must also 'notify individuals who are subject to deportation that they have the right to apply for asylum in the United States and for withholding of deportation to the country to which they will be deported'; otherwise, DHS violates their constitutional right to due process." (quoting Andriasian, 180 F.3d at 1041)).

With respect to what process is due to a noncitizen who seeks to adjudicate a fear-based claim before removal to a third country, the Court finds A.A.M. v. Andrews, 815 F. Supp. 3d 1124 (E.D. Cal. 2025), instructive. In A.A.M., the district court stated:

\\\

> Several decisions from the Western District of Washington, however, have more thoroughly analyzed the constitutionally proper process by which a noncitizen may seek to adjudicate his fear-based claim before removal to a third country. In *Aden v. Nielsen*, 409 F. Supp. 3d 998 (W.D. Wash 2019) the court found that the noncitizen's right to due process in relation to his removal to a third country "includes the right to a full and fair hearing, an impartial decisionmaker, and evaluation of the merits of his or her particular claim." 409 F. Supp. 3d at 1010 (citing *Torres-Aguilar v. INS*, 246 F.3d 1267, 1270 (9th Cir. 2001)). Accordingly, the court in *Aden* found, "[g]iving petitioner an opportunity to file a motion to reopen—a motion which seeks discretionary relief that may be denied without any sort of hearing—is not an adequate substitute for the process that is due in [the third country removal] circumstances." *Id.* Applying that analysis directly to the DHS Third Country Removal Policy, the court in *Nguyen v. Scott*, No. 25-cv-01398, 2025 WL 2419288 at *18 (W.D. Wash. Aug. 21, 2025), found the "requirements set forth in *Aden* flow directly from binding Ninth Circuit precedent about due process protections before removal to a third country," "[t]hat Ninth Circuit precedent is binding on this Court," and "the application of that precedent in *Aden* is persuasive." 2025 WL 2419288 at *18. The court in *Nguyen* therefore issued a preliminary injunction finding that "Petitioner is likely to succeed on his claim that removal to a third country under [the DHS Third Country Removal Policy], without meaningful notice and *reopening of his removal proceedings for a hearing*, would violate due process." *Id.* at 19 (emphasis added).
>
> Further, in applying the holdings from *Aden* and *Nguyen*, the court in *Abubaka v. Bondi*, No. 25-cv-01889-RSL, 2025 WL 3204369, at *6 (W.D. Wash. Nov. 17, 2025) determined "on the merits of petitioner's argument that due process does not allow respondents to 'remove or seek to remove him to a third country without notice and meaningful opportunity to respond in compliance with the statute and due process in reopened removal proceedings.' " The court in *Abubaka* emphasized that even though DHS's Third Country Removal Policy replaced the policy at issue in *Aden*, the "ruling in *Aden* remains persuasive today and therefore this Court adopts its holdings in *Aden* for the purposes of this ruling ...." *Id.* at 7; *see also Baltodano v. Bondi*, No. 25-cv-1958-RSL, 2025 WL 2987766, at *4 (granting motion for temporary restraining order enjoining Petitioner's removal to third country "without notice and a meaningful opportunity to respond in compliance with statute and due process in reopened removal proceedings").
>
> This court finds these decisions from the Western District of Washington persuasive. Due Process requires that Petitioner receive a full and fair hearing of his fear-based claim in front of a neutral adjudicator. This requirement is not satisfied by simply providing Petitioner the time and opportunity to file a discretionary motion to reopen his immigration proceedings.

<u>A.A.M.</u>, 815 F. Supp. 3d at 1140–41.

Accordingly, the undersigned recommends enjoining Respondents "from removing Petitioner via a third-country deportation to any country" if "Petitioner does assert a fear-based claim for relief from removal . . . without first providing him a meaningful opportunity to be heard on his fear-based claim before an immigration judge in compliance with due process." A.A.M. v. Andrews, No. 1:25-cv-01514-DC-DMC (HC), 2025 WL 3685159, at *7 (E.D. Cal. Dec. 19, 2025). See Arenado-Borges v. Bondi, No. 2:25-CV-02193-JNW, 2025 WL 3687518, at *7 (W.D. Wash. Dec. 19, 2025) (enjoining government "from removing or seeking to remove Petitioner to a third country without notice and a meaningful opportunity to respond in reopened removal proceedings before an Immigration Judge.").

**III.**

**RECOMMENDATION**

Accordingly, the undersigned HEREBY RECOMMENDS that:

1. The petition for writ of habeas corpus be GRANTED on Ground Three.
2. Respondents be directed to immediately release Petitioner from custody under the conditions of his most recent order of supervision.
3. Respondents be enjoined and restrained from re-detaining Petitioner unless there are material changed circumstances and a neutral decisionmaker determines that there is a significant likelihood of Petitioner's removal in the reasonably foreseeable future, or Respondents demonstrate by clear and convincing at a pre-deprivation bond hearing before a neutral decisionmaker that Petitioner is a flight risk or danger to the community such that his physical custody is legally justified.
4. Respondents be enjoined and restrained from effectuating Petitioner's third country removal unless Respondents adhere to the following procedures:
    a. Provide Petitioner and his counsel a minimum of fourteen (14) days to raise a fear-based claim for protection prior to removal; and
    b. if Petitioner does assert a fear-based claim for relief from removal, Respondents must provide Petitioner a meaningful opportunity to be heard on his fear-based claim before an immigration judge in compliance with due process.

This Findings and Recommendation is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within **FOURTEEN (14) days** after service of the Findings and Recommendation, any party may file written objections, **no longer than fifteen (15) pages, including exhibits**, with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served and filed within fourteen (14) days after service of the objections. The assigned United States District Court Judge will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **August 28, 2026**

/s/ Eric P. Grosjean
UNITED STATES MAGISTRATE JUDGE